**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1153
_____

UNITED STATES OF AMERICA

v.

JOHN J. MCELROY,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-11-cr-00616-001)
District Judge: Hon. Lawrence F. Stengel

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 9, 2014

BEFORE: VANASKIE, COWEN AND VAN ANTWERPEN, Circuit Judges

(Filed: February 5, 2015)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

COWEN, Circuit Judge.

Defendant John J. McElroy appeals from the criminal sentence imposed by the United States District Court for the Eastern District of Pennsylvania. We will enforce the appellate waiver executed by McElroy and summarily affirm his sentence.

I.

McElroy pled guilty to seventeen counts of wire fraud (and aiding and abetting wire fraud) in violation of 18 U.S.C. §§ 1343, three counts of making false statements to obtain a loan (and aiding and abetting the making of false statements) in violation of 18 U.S.C. §§ 1014, and ten counts of engaging in monetary transactions from unspecified unlawful activity (and aiding and abetting such criminal conduct) in violation of 18 U.S.C. §§ 1957. As part of the plea agreement, McElroy waived his rights to appeal or collaterally attack his conviction or sentence except in limited circumstances.

The District Court sentenced McElroy to 108 months imprisonment and five years supervised release. The District Court imposed three special conditions of supervised release: (1) that McElroy participate in a mental health program for evaluation or treatment; (2) that he report any regular contact with children under the age of eighteen to the United States Probation Office and that he not obtain employment or volunteer work including regular contact with children younger than eighteen; and (3) that he comply with the requirements of the Sex Offender Registration and Notification Act ("SORNA"). He was also ordered to pay restitution in the amount of $1,491,979.74 as well as a $3000 special assessment. McElroy filed a timely notice of appeal and a motion to correct the

sentence. His motion was denied. The government filed a motion to enforce the appellate waiver and for summary affirmance.

## II.

McElroy's plea agreement limited his potential appeals to challenging, exclusively, (1) a sentence exceeding the statutory maximum, (2) an erroneous upward departure from the Sentencing Guidelines, and (3) an unreasonable sentence above the final Sentencing Guideline range determined by the District Court. According to McElroy, the appellate waiver does not bar his appeal because enforcement of the waiver would result in a miscarriage of justice.[1] See, e.g., United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2009). He contends that the special conditions were patently illegal, unsupported by the record, and imposed a greater deprivation of liberty than was reasonably necessary. He further claims that the District Court's consideration of salacious, out-of-date, and unfounded allegations infected the entire sentence. However, we conclude that the District Court's sentence—and, in particular, the three special conditions imposed by the District Court—were appropriate and that, in any event, the enforcement of the appellate waiver would not result in a miscarriage of justice. See, e.g., United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (indicating that miscarriage of justice exception will be applied sparingly and without undue generosity).

Although McElroy's conviction and sentence arises out of his involvement in a

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We possess appellate jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

3

mortgage fraud scheme, the District Court did not commit reversible error (or a miscarriage of justice) by imposing the conditions. See, e.g., United States v. Heckman, 592 F.3d 400, 405 (3d Cir. 2010) ("[O]nly a 'condition with no basis in the record, or with only the most tenuous basis, will inevitably violate § 3583(d)(2)'s command that such conditions involve no greater deprivation of liberty than is reasonably necessary.'" (citation omitted)); United States v. Pruden, 398 F.3d 241, 248-49 (3d Cir. 2005) ("The § 3553(a) factors are fairly broad, but they do impose a real restriction on the district court's freedom to impose conditions on supervised release. Courts generally cannot impose such a condition—even one with a clearly rehabilitative purpose—without evidence the condition imposed is 'reasonably related,' that is, related in a 'tangible way,' to the crime or to something in the defendant's history." (citation omitted)). More broadly, the District Court reasonably relied on McElroy's troubling (and ongoing) history of self-serving and harmful behavior to decide on an appropriate sentence. See, e.g., United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008) ("[W]e are to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way."). While serving as a Catholic priest in New Jersey in the late 1980s, McElroy was convicted of aggravated sexual contact and endangering the welfare of a child. He was sentenced to five years imprisonment. Psychological evaluations indicated that McElroy had a manipulative, psychopathic, and sociopathic personality. In 2007, McElroy and his first wife were divorced, and, during the course of these divorce proceedings, she claimed that he sexually abused their daughter. McElroy formally relinquished his parental rights, and the state court prohibited him from

4

any contact with his own daughter. Beginning in 2007, McElroy participated in a sophisticated and protracted mortgage fraud scheme. Given these circumstances, the District Court appropriately determined that:

> Mr. McElroy's adult life has been consistently marked by predatory and opportunistic behavior, behavior which drove the sex offenses just as it drove the financial fraud offenses. His tendency to commit crimes of opportunity has not diminished. The psychologist's words in the August 1989 evaluation are quite revealing: Mr. McElroy's behavior was "simply an expression of his tendency to take what he wanted, when he wanted it." See PSR ¶ 65. Judging by the facts of this case, the psychologist's words are still true twenty-five years later.

(A260.)

### III.

For the foregoing reasons, we grant the government's motion. We will enforce McElroy's appellate waiver and summarily affirm his sentence.